UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| JESSE COOPER, as CO-TRUSTEE OF | * | |
| THE SYLVIA RUBIN LIFETIME TRUST | * | |
| f/b/o DEBORAH COOPER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 24-cv-12189-ADB |
| | * | |
| | * | |
| ANDREW SHABSHELOWITZ and | * | |
| WESTON ASSOCIATES, INC., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Plaintiff Jesse Cooper ("Plaintiff" or "Cooper"), as co-trustee of the Sylvia Rubin

Lifetime Trust f/b/o Deborah Cooper (the "Trust"), initiated this action against Andrew

Shabshelowitz ("Shabshelowitz"), Jeffrey Upton ("Upton"), and Weston Associates, Inc.

("Weston Associates") (collectively, "Defendants") asserting common law tort and breach of

contract claims, as well as a claim pursuant to Chapter 93A of the Massachusetts General Laws.

The Court granted Upton's motion to dismiss and granted in part and denied in part

Shabshelowitz and Weston Associates' motions to dismiss.  [ECF No. 44 (the "Motion to

Dismiss Memorandum and Order" or "MTD M&O")].  Shabshelowitz and Weston Associates

now move for reconsideration of the partial denial of their motions to dismiss.  [ECF No. 79];

[ECF No. 85].  For the reasons set forth below, Shabshelowitz's motion for reconsideration is

**GRANTED** and Weston Associates' motion for reconsideration is **GRANTED IN PART** and **DENIED IN PART**.

I.      **BACKGROUND**

A.      **Factual Background**

A detailed summary of facts underlying this case is set forth in the Court's prior order, [MTD M&O at 2–5], and, for present purposes, is summarized as follows.[1]

At all relevant times, Sylvia Rubin ("Rubin") owned one of eleven limited partnership units in an affordable housing development called Mercantile Wharf, located at 111 Atlantic Avenue in Boston. [Compl. ¶¶ 15–16]. Shabshelowitz had served as estate planning lawyer and accountant for Rubin and her husband Charles since 1988, [id. ¶ 48], and he was also a trustee for several other trusts (the "Sousa Trusts") that owned partial units in the development, [id. ¶ 73].

In February 2015, on Shabshelowitz's advice, Rubin accepted a merger initiated by the development's General Partner that would result in a cash payment to owners of $772,000 per unit. [Compl. ¶¶ 68–69, 77–78]. Shabshelowitz advised Rubin to accept the merger terms but to delete language in the merger agreement that would release the General Partner from liability for the transaction. [Id. ¶¶ 77–78]. Rubin received the $772,000 for her unit. [Id. ¶ 77].

---

[1] At the motion to dismiss stage, in addition to considering the facts alleged in the complaint and its attached exhibits, the Court "is also entitled to consider matters of public record, documents of undisputed authenticity, and documents sufficiently referred to in the complaint, even where those documents are not attached as exhibits to the complaint." Avanru Dev. Grp., Ltd. v. Town of Swanzy, NH Zoning Board, 777 F. Supp. 3d 63, 77 (D.N.H. 2025) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Here, both the Plaintiff and Defendants have attached a copy of the relevant portion of Cooper's September 2019 deposition to their motion for reconsideration briefings, and as such, the Court will consider the facts shown therein.

An affiliate of Weston Associates that owned 1.5 units in the Mercantile Wharf partnership took a different approach, declining the cash payout and suing the General Partner instead.  [Compl. ¶¶ 80, 82–83 (citing MW Associates LLC v. Mercantile Affordable Partners LLC, No. 1684CV00486 (Suffolk Cty. Super. Ct. Sep. 25, 2017) ("Mercantile I"))].

In April 2016, Cooper was appointed attorney-in-fact for Rubin.  [Compl. ¶ 51].  In August 2017, Weston Associates contacted Shabshelowitz to suggest that his clients assign Weston Associates any claims against the General Partner in exchange for 50% of the net proceeds of the claims.  [Id. ¶¶ 88–89].  Cooper then contacted Weston Associates, who did not disclose that the assessed fair market value per unit was $1,821,000.  [Id. ¶ 94].  Shabshelowitz advised Cooper to accept Weston Associates' claim assignment proposal, [id. ¶ 99], and Cooper did so on August 18, 2017, [id. ¶ 104].  On November 13, 2017, Weston Associates proposed a new agreement to Cooper that would supersede the claim assignment agreement and turn it into an attorney-in-fact agreement (the "AIF Agreement"), [id. ¶ 109], which Shabshelowitz again advised Cooper to accept, [id. ¶ 112].

On January 26, 2018, the General Partner sent Shabshelowitz a letter for Rubin proposing to discuss settlement options, with terms potentially including an additional payment or the return of the unit (the "Belveron Proposal").  [Compl. ¶ 22].  Upon Rubin's death in April 2018, the Trust was created, with Cooper as a co-trustee.  [Id. ¶ 54].  Rather than sending the Belveron Proposal to Rubin or Cooper, Shabshelowitz sent it to Weston Associates.  [Id. ¶ 24].

Weston Associates commenced litigation over the assigned claims on March 21, 2018, Rubin v. Mercantile Affordable Partners LLC, No. 1884CV0095 (Suffolk Cty. Super. Ct. Oct. 25, 2021) ("Mercantile II").  The General Partner filed a counterclaim alleging that Shabshelowitz was partially responsible for Cooper's damages, which Weston Associates did not

disclose to Cooper, [Compl. ¶ 123], and Shabshelowitz, unbeknownst to Cooper, was deposed in connection with Mercantile II. [Id. ¶¶ 151–52]. Cooper, too, was deposed in connection with the litigation, in September 2019 (the "September 2019 Deposition"). [ECF No. 75 ("Notice of Correction") at 4]. The matter ultimately settled on July 30, 2021, [id. ¶¶ 120, 141], with the Trust receiving $948,620.51 for its claim, [id. ¶ 148], and Weston Associates receiving $1,422,930 total from all of the claims that had been assigned to it, [id. ¶ 149].

Cooper initially alleged that he only became aware of the Belveron Proposal in August 2022, when he requested and received the transcript of Shabshelowitz's deposition from Mercantile II. [Compl. ¶ 43]. As explained in his notice of correction, [ECF No. 75 ("Notice of Correction")], however, Cooper was actually shown the Belveron Proposal as an exhibit and asked questions pertaining to it during the September 2019 Deposition, [id. at 4].[2] Cooper claims that he did not recall seeing the Belveron Proposal at the September 2019 Deposition and provides multiple explanations as to why he did not become aware of the Belveron Proposal until August 2022, despite having been shown a copy of it in 2019. [Id. at 9–12]. In his Notice of Correction, Cooper also explains that his previous allegation that he had never obtained a copy of the Belveron Proposal prior to August 2024 was also incorrect. [Id.]. In fact, a copy of his September 2019 Deposition transcript, which he received in March 2023, contained embedded links to the deposition exhibits, including the Belveron Proposal. [Id.].

According to the September 2019 Deposition transcript, Mercantile Affordable Partners LLC's counsel ("Opposing Counsel") provided Cooper with two documents marked together as

---

[2] Cooper attached an excerpt of the September 2019 Deposition transcript as Exhibit 3 of his Notice of Correction. [ECF No. 75-3]. Weston Associates attached a full copy of the transcript and its exhibits as Exhibit 2 to its motion for reconsideration. [ECF No. 80-2].

Exhibit 2: (1) a January 26, 2018 letter on the stationary of Belveron Partners addressed to Ms. Sylvia Rubin (the Belveron Proposal) and (2) a copy of an email to andy.shabco@verizon.net from Louis A. Harrison.  [ECF No. 75-3 at 3]; [ECF No. 80-2 at 15].  Opposing Counsel asked Cooper "to take a moment and read both the letter and the e-mail and let [Opposing Counsel] know when [Cooper had] had a chance to do that."  [ECF No. 75-3 at 4].  Cooper responded, "Sure.  Okay."  [Id.].  Cooper was then asked if he had "[s]een the first page of Exhibit 2, the January 26th, 2018 letter before [that day]," to which he responded that he had not.  [Id.].  Cooper also stated that he had never seen the email from Harrison to Shabshelowitz.  [Id. at 4–5].  Opposing Counsel next asked Cooper whether Shabshelowitz had "advised [Cooper] that the general partner of Mercantile Wharf had approached him about discussing an arrangement providing additional compensation for the acquisition of the limited partnership interest previously owned by [his] grandmother," to which Cooper responded that Shabshelowitz had not.  [Id. at 5].  Opposing Counsel then referred Cooper back to the Belveron Proposal and stated, "If you look at the second paragraph on that letter, the second sentence of that second paragraph says the GPs ended the litigation using the plaintiff['s] opinion of value, $48 million at the time of the merger (February, 2015).  Do you see where I am?"  [Id.].  Cooper responded, "Yes."  [Id.].  Opposing Counsel asked Cooper, "Did anyone ever advise you that the claim brought by the Weston Associates affiliate had been resolved using the opinion of value offered by Weston Associates of approximately $48 million?"  [Id. at 5–6].  Cooper responded, "I don't believe so."  [Id. at 6].  Counsel also asked Cooper whether "anyone ever advised [him] that after the Weston Associates litigation was resolved, the general partner of Mercantile also provided additional compensation to resolve claims held by other former limited partners in Mercantile," to which Cooper responded, "No."  [Id.].  Cooper was then shown a settlement agreement

between the General Partner and another limited partner from July 31, 2018, and was asked questions regarding that agreement, including whether anyone had advised him that the General Partner had previously "provided additional compensation to resolve claims held by other former limited partners in Mercantile." [Id.]; [ECF 80-2 at 70].

Cooper claims that despite being shown the Belveron Proposal and being asked questions about it during the September 2019 Deposition, he did not understand the significance of that Proposal until August 2022. [ECF No. 75-12 ¶ 14].

### B. Procedural History

Cooper filed the Complaint on August 23, 2024, alleging breach of fiduciary duty against all Defendants, legal malpractice and negligence against Shabshelowitz and Upton, violation of Massachusetts General Laws Chapter 93A and fraud against Weston Associates and Upton, breach of contract against Weston Associates, and aiding and abetting breach of fiduciary duty against Upton. All Defendants moved to dismiss on November 18, 2024. [ECF Nos. 16, 18, 20]. Following full briefing on these motions, the Court dismissed all claims against Upton (Counts VIII through XIII), the negligence claim against Shabshelowitz (Count III), and the fraud claim against Weston (Count V). [MTD M&O at 26]. The Court denied Shabshelowitz's motion to dismiss the legal malpractice claim against him (Count II) and Weston Associates' motion to dismiss the breach of contract claim against it (Count VII), and granted in part and denied in part Shabshelowitz's motion to dismiss the breach of fiduciary duty claim against him (Count I) and Weston Associates' motion to dismiss the Chapter 93A (Count IV) and breach of fiduciary duty (Count VI) claims against it. [Id.].

On November 11, 2025, Cooper filed his Notice of Correction, [Notice of Correction], to correct two allegations in his Complaint, as explained above. He also indicated that he intended

to seek leave to amend his Complaint in light of these corrections.  [Id. at 1].  On November 26, 2025, Weston Associates filed a motion for reconsideration of the Court's partial denial of its motion to dismiss, [ECF No. 79], and on December 4, 2025, Shabshelowitz filed a motion for reconsideration of the Court's partial denial of his motion to dismiss, [ECF No. 85].  On December 10, 2025, Cooper opposed both motions for reconsideration.  [ECF Nos. 87, 88].

## II.    LEGAL STANDARD

### A.    Motion for Reconsideration

"A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment."  Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000); see also Fed. R. Civ. P. 54(b); Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008) ("[A] district court has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent.").  The Supreme Court, however, has cautioned that "courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).  With these principles in mind, "a court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order."  Davis, 89 F. Supp. 2d at 147; see Tomon v. Entergy Nuclear Operations, Inc., No. 05-cv-12539, 2011 WL 3812708, at *1 (D. Mass. Aug. 25, 2011) ("[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the

law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.") (citing United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)).

      **B.**        **Motion to Dismiss**

In deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.    DISCUSSION

In the Motion to Dismiss Memorandum and Order, the Court detailed the legal standards for the fraudulent concealment doctrine, which Cooper argued tolled the applicable statute of limitations for all of his claims, and the discovery rule, which Cooper argued tolled the statute of limitations for his attorney malpractice and breach of fiduciary duty claims. [MTD M&O at 9–10]. After careful consideration of the law and the available facts, namely that Cooper was not aware of the Belveron Proposal until 2024, the Court found that Cooper had satisfied both the fraudulent concealment standard and the discovery rule and, as a result, tolled the statute of limitations for his tort claims against Shabshelowitz, except to the extent that they were premised

on Shabshelowitz's alleged negligence in advising Cooper to accept the $772,000 from the General Partner. [Id. at 10–15]. The Court also held that Cooper's tort claims against Weston Associates were similarly tolled based on the doctrine of fraudulent concealment to the extent that the claims were based on events involving the Belveron Proposal, not the AIF Agreement. [Id.]. Cooper's breach of contract claim against Weston Associates was brought within the applicable statute of limitations timeframe, and to the extent it was based on the events surrounding the Belveron Proposal, the Court found that it was also tolled based on the fraudulent concealment doctrine. [Id. at 15–16]. The Court held that Cooper had not, however, adequately alleged facts to support tolling of his claims against Upton. [Id. at 16–17].

### A.     Plaintiff's Tort Claims

Under Massachusetts law, the statute of limitations for torts, including breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, legal malpractice, and fraud, is three years, Fincher v. Town of Brookline, 26 F.4th 479, 485–86 (1st Cir. 2022), and a tort cause of action accrues either at the time when the plaintiff is injured, "or, if the wrong is 'inherently unknowable,' when the plaintiff knows or should have known that [s/he] has been injured," Pagliuca v. City of Boston, 626 N.E.2d 625, 628 (Mass. App. Ct. 1994) (citations omitted). Under the statutory discovery rule, the fraudulent concealment doctrine "tolls the statute of limitations 'where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part.'" Krick v. Raytheon Co., 695 F. Supp. 3d 202, 216 (D. Mass. 2023) (quoting Salois v. Dime Sav. Bank, FSB, 128 F.3d 20, 25 (1st Cir. 1997)) (citing Mass. Gen. Laws ch. 260, § 1); City of Boston v. Express Scripts, Inc., 765 F. Supp. 3d 31, 43 (D. Mass. 2025) ("[w]here there is fraudulent concealment, the common-law discovery rule gives way to the statutory discovery rule." (quoting Magliacane v. City of Gardner, 138

N.E.3d 347, 357 (Mass. 2020))).  When the fraudulent concealment doctrine is in play, the statute of limitations is triggered when the plaintiff has actual knowledge "of facts giving rise to [his] injury by the defendant," but he does not need to have a full understanding of the "causal connection between [his] injuries and a legally cognizable claim against the defendant."  von Schönau-Riedweg v. Rothschild Bank AG, 128 N.E.3d 96, 116–17 (Mass. App. Ct. 2019) (quoting Doe v. Harbor Schs., Inc., 843 N.E.2d 1058, 1061–62 (Mass. 2006)) (finding that the plaintiff had actual knowledge of her injury sufficient to trigger the statute of limitations where she had received tax documents showing defendant's investment losses in four relevant years and, according to her own testimony, was aware of "the repeated failure of [the company's] plans for commercialization").

Under Massachusetts law, "in most instances, the question [of] when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact." Taygeta Corp. v. Varian Assocs., Inc., 763 N.E.2d 1053, 1063 (Mass. 2002) (citing Riley v. Presnell, 565 N.E.2d 780, 783 (Mass. 1991).  "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known his cause(s) of action are to be resolved by the jury.'"  Patsos v. First Albany Corp., 741 N.E.2d 841, 847 (Mass. 2001) (quoting Riley, 565 N.E.2d at 787); see also BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C., 166 F.4th 197, 220 (1st Cir. 2026) (holding that whether plaintiff had gained knowledge sufficient to trigger the statute of limitations under the discovery rule is a jury issue).

1.    Impact of Newly Discovered Evidence on Plaintiff's Tort Claims

Weston Associates and Shabshelowitz now argue that based on the newly discovered evidence set forth in Cooper's Notice of Correction, the statute of limitations for Cooper's torts claims began to run in September 2019 rather than August 2022, and the statute of limitations

had therefore expired by the time the Complaint was filed.  [ECF No. 80 at 10].  Cooper, on the other hand, despite acknowledging that he was shown the Belveron Proposal during the September 2019 Deposition, maintains that he still did not have actual knowledge of the Belveron Proposal until August 2022, and the Court's holding in the Motion to Dismiss Memorandum and Order should not be reconsidered.  [Notice of Correction at 4].

Cooper provides several explanations as to why he did not acquire actual knowledge of the Belveron Proposal during the September 2019 Deposition.  First, Cooper points to the fact that he swore under oath during the September 2019 Deposition that he had never seen the document prior to that instance.  [Id. at 9].  Next, he argues that Upton, Cooper's counsel at the September 2019 Deposition, did not disclose or explain the Belveron Proposal to Cooper, and neither Upton nor Weston Associates recalled the letter being shown in the deposition.  [Id. at 9–11].  And last, Cooper claims that he was nervous during the deposition, and opposing counsel only put the Belveron Proposal before him for "a matter of minutes" as he was simultaneously being questioned.  [Id. at 11].

First, the issue before the court is whether Cooper gained actual knowledge of the Belveron proposal during his September 2019 Deposition.  For present purposes, it is irrelevant whether Cooper saw the Belveron Proposal prior to the September 2019 Deposition.  Similarly, Cooper's argument that neither Weston Associates nor Upton disclosed or explained the letter to him at the time of the deposition carries little weight.  The key issue is the time at which Cooper became aware of "the facts giving rise to [his] injury," not the time at which he became aware of the "causal connection between [his] injuries and a legally cognizable claim."  von Schönau-Riedweg, 128 N.E.3d at 116–17 (quoting Doe, 843 N.E.2d at 1061–62).  It is not necessary for statute of limitation purposes that Cooper's knowledge of the Belveron Proposal came from

12

Weston Associates or Upton, or that Weston Associates or Upton had explained the letter to him, and their failure to do so does not necessarily indicate that Cooper did not gain actual knowledge as of the date of the September 2019 Deposition.

In his final argument, Cooper claims that because of his nervousness and the brief amount of time spent on the Belveron Proposal during the September 2019 Deposition, he did not understand the significance of what he was shown at that time.  [Notice of Correction at 11]. As laid out in the relevant portions of the transcript, during the September 2019 Deposition, Cooper was given a copy of the Belveron Proposal addressed specifically to Sylvia Rubin, explicitly asked to "take a moment and read . . . the letter and the [attached email to Shabshelowitz]," and instructed to inform opposing counsel once he had finished.  [ECF No. 75-3 at 3–4].  Cooper agreed to do so, and the transcript provides no indication that Cooper did not or was unable to comply with those instructions.  [Id. at 4].  Opposing counsel then asked Cooper multiple questions about the letter, including whether Shabshelowitz had advised him "that the general partner of Mercantile Wharf had approached him about discussing an arrangement providing additional compensation for the acquisition of the limited partnership interest previously owned by [his] grandmother" and whether he was advised "that after the Weston Associates litigation was resolved, the general partner of Mercantile also provided additional compensation to resolve claims held by other former limited partners in Mercantile."  [Id. at 5–6].  Cooper responded "no" to both questions.  [Id.].  Despite acknowledging these facts, Cooper still argues that he did not understand the significance of what he was shown and asked about until August 2022.  [ECF No. 87 at 15].

At the motion to dismiss stage, the Court must accept as true all well-pleaded facts and draw all reasonable inferences in the plaintiff's favor.  United States ex rel. Hutcheson, 647 F.3d

at 383; see also Ocasio-Hernandez, 640 F.3d at 1, 12 ("Non-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible"); Iqbal, 556 U.S. at 681 (distinguishing between allegations that are legally conclusory, and therefore "disentitle[d] . . . to the presumption of truth," and allegations that are factually "unrealistic," "nonsensical," or "extravagantly fanciful"); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("[R]ule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). The Court, however, need not credit allegations "which have been 'conclusively contradicted by [plaintiff's] concessions or otherwise.'" Lister v. Bank of Am., 790 F.3d 20, 23 (1st Cir. 2015) (quoting Soto–Negrón v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003)). "When exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." Avanru Dev. Grp., Ltd., 777 F. Supp. 3d at 77 (citing Gill v. Judd, 941 F.3d 504, 514 (11th Cir. 2019) ("Just as the court is not bound to credit conclusory allegations, it is also not required to credit factual allegations in the complaint that are "conclusively contradicted" by other sources the court may properly consider on the motion.")).

The Court finds that the transcript of the September 2019 Deposition conclusively contradicts Cooper's allegation that he did not gain actual knowledge of the Belveron Proposal until August 2022. During the September 2019 Deposition, Cooper was not only shown a copy of the Belveron Proposal, but was asked to read it, which he confirmed he would do, and was then asked whether he had seen it before, to which he responded that he had not. He was subsequently asked multiple questions that were, at least implicitly, related to its contents. This transcribed sequence of events, particularly given that the letter was specifically addressed to his grandmother, was only one page, and was not overly technical or complex, establishes that there is no ambiguity as to whether Cooper read the Belveron Proposal and gained actual knowledge

14

of it during the September 2019 Deposition.  See BlueRadios, Inc., 166 F.4th at 214 (finding that

"mere receipt of highly technical patent applications" did not trigger notice for non-lawyer

plaintiffs).  Further, Cooper's answers were given under oath, see [ECF No. 80-2 at 6], and were

transcribed precisely by a court reporter, see [id. at 48].

As such, the Court will amend its prior decision as to the tolling of the statute of

limitations for certain of Cooper's tort claims against Weston Associates and Shabshelowitz, and

now concludes that because Cooper had actual knowledge of the Belveron Proposal in

September 2019, the statute of limitations for Cooper's tort claims against Weston Associates

and Shabshelowitz began to run at that time and had expired by the time Cooper's Complaint

was filed.  Counts I, II, IV, and VI are, therefore, dismissed.

### B.    Plaintiff's Breach of Contract Claim Against Weston

Cooper, in his breach of contract claim against Weston Associates (Count VII), alleges

that Weston Associates failed to keep him appraised of the litigation, including by failing to

inform him about the Belveron Proposal and the General Partner's counterclaim against

Shabshelowitz, and by issuing the Appraisal Report, which he purports misrepresented the status

and potential value of the litigation.  [Compl. ¶¶ 214–19].  In Massachusetts, breach of contract

claims have a six-year statute of limitations.  Berezin v. Regency Sav. Bank, 234 F.3d 68, 73 (1st

Cir. 2000) (citing Mass. Gen. Laws ch. 260, § 2).  The Court previously found that Cooper's

claim was not time barred because it is premised on Weston Associates' failure to "keep Mrs.

Rubin advised of the progress of the litigation," [id. ¶ 215], including by withholding

information regarding the counterclaim against Shabshelowitz, which took place in September

2018, and by issuing the Appraisal Report, which took place in May 2019, which would fall

within the applicable statute of limitations.  To the extent the claim was based on events

surrounding the Belveron Proposal, the claim would be tolled for the same reasons as the tort claims.

Even acknowledging that Cooper gained actual knowledge of the Belveron Proposal in September 2019, the allegations supporting the claim fell within the six-year period before Cooper filed the Complaint. Accordingly, the Court will not amend its prior decision denying Weston Associates' motion to dismiss Count VII.

## IV.    CONCLUSION

Accordingly, Shabshelowitz's motion for reconsideration is **GRANTED** and Weston Associates' motion for reconsideration is **GRANTED IN PART**.

**SO ORDERED.**

June 1, 2026                                        */s/ Allison D. Burroughs*
                                                   ALLISON D. BURROUGHS
                                                   U.S. DISTRICT JUDGE