UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JESSE COOPER, as CO-TRUSTEE OF THE SYLVIA RUBIN LIFETIME TRUST f/b/o DEBORAH COOPER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 24-cv-12189-ADB |
| ANDREW SHABSHELOWITZ and WESTON ASSOCIATES, INC., | * | |
| Defendants. | * | |

# MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Jesse Cooper ("Plaintiff" or "Cooper"), as co-trustee of the Sylvia Rubin Lifetime Trust f/b/o Deborah Cooper (the "Trust"), initiated this action against Andrew Shabshelowitz ("Shabshelowitz"), Jeffrey Upton ("Upton"), and Weston Associates, Inc. ("Weston Associates") (collectively, "Defendants") asserting common law tort and breach of contract claims, as well as a claim pursuant to Chapter 93A of the Massachusetts General Laws. All claims, aside from one breach of contract claim against Weston Associates, have been dismissed, and Cooper now seeks leave to file an amended complaint to assert several previously dismissed claims against Weston Associates and Shabshelowitz supported by additional facts, re-add Upton as a defendant based on additional facts, add an additional claim against all Defendants for common law fraud, provide more specificity as to the duties each Defendant

owed to Cooper and Rubin, and further explain why certain statutes of limitations were tolled until 2022. [ECF No. 89]; see [ECF No. 90].

Currently before the Court is Cooper's motion for leave to file an amended complaint. [ECF No. 89]. For the reasons set forth below, the motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background

A detailed summary of facts underlying this case is set forth in the Court's prior order on Defendants' motions to dismiss, [ECF No. 44 (the "Motion to Dismiss Memorandum and Order" or "MTD M&O")], and is also summarized in the Court's order on the motions for reconsideration, [ECF No. 123 (the "Motions for Reconsideration Memorandum and Order" or "MFR M&O")]. That summary is reproduced here for reference.

At all relevant times, Sylvia Rubin ("Rubin") owned one of eleven limited partnership units in an affordable housing development called Mercantile Wharf, located at 111 Atlantic Avenue in Boston. [Compl. ¶¶ 15–16]. Shabshelowitz had served as estate planning lawyer and accountant for Rubin and her husband Charles since 1988, [id. ¶ 48], and he was also a trustee for several other trusts (the "Sousa Trusts") that owned partial units in the development, [id. ¶ 73].

In February 2015, on Shabshelowitz's advice, Rubin accepted a merger initiated by the development's General Partner that would result in a cash payment to owners of $772,000 per unit. [Compl. ¶¶ 68–69, 77–78]. Shabshelowitz advised Rubin to accept the merger terms but to delete language in the merger agreement that would release the General Partner from liability for the transaction. [Id. ¶¶ 77–78]. Rubin received $772,000 for her unit. [Id. ¶ 77].

An affiliate of Weston Associates that owned 1.5 units in the Mercantile Wharf partnership took a different approach, declining the cash payout and suing the General Partner instead. [Compl. ¶¶ 80, 82–83 (citing MW Associates LLC v. Mercantile Affordable Partners LLC, No. 1684CV00486 (Suffolk Cty. Super. Ct. Sep. 25, 2017) ("Mercantile I"))].

In April 2016, Cooper was appointed attorney-in-fact for Rubin. [Compl. ¶ 51]. In August 2017, Weston Associates contacted Shabshelowitz to suggest that his clients assign Weston Associates any claims against the General Partner in exchange for 50% of the net proceeds of the claims. [Id. ¶¶ 88–89]. Cooper then contacted Weston Associates, who did not disclose that the assessed fair market value per unit was $1,821,000. [Id. ¶ 94]. Shabshelowitz advised Cooper to accept Weston Associates' claim assignment proposal, [id. ¶ 99], and Cooper did so on August 18, 2017, [id. ¶ 104]. On November 13, 2017, Weston Associates proposed a new agreement to Cooper that would supersede the claim assignment agreement and turn it into an attorney-in-fact agreement (the "AIF Agreement"), [id. ¶ 109], which Shabshelowitz again advised Cooper to accept, [id. ¶ 112].

On January 26, 2018, the General Partner sent Shabshelowitz a letter for Rubin proposing to discuss settlement options, with terms potentially including an additional payment or the return of the unit (the "Belveron Proposal"). [Compl. ¶ 22]. Upon Rubin's death in April 2018, the Trust was created, with Cooper as a co-trustee. [Id. ¶ 54]. Rather than sending the Belveron Proposal to Rubin or Cooper, Shabshelowitz sent it to Weston Associates. [Id. ¶ 24].

Weston Associates commenced litigation over the assigned claims on March 21, 2018, Rubin v. Mercantile Affordable Partners LLC, No. 1884CV0095 (Suffolk Cty. Super. Ct. Oct. 25, 2021) ("Mercantile II"). The General Partner filed a counterclaim alleging that Shabshelowitz was partially responsible for Cooper's damages, which Weston Associates did not

disclose to Cooper, [Compl. ¶ 123], and Shabshelowitz, unbeknownst to Cooper, was deposed in connection with Mercantile II. [Id. ¶¶ 151–52]. Cooper, too, was deposed in connection with the litigation, in September 2019 (the "September 2019 Deposition"). [ECF No. 75 ("Notice of Correction") at 4]. The matter ultimately settled on July 30, 2021, [id. ¶¶ 120, 141], with the Trust receiving $948,620.51 for its claim, [id. ¶ 148], and Weston Associates receiving $1,422,930 total from all of the claims that had been assigned to it, [id. ¶ 149].

Cooper initially alleged that he only became aware of the Belveron Proposal in August 2022, when he requested and received the transcript of Shabshelowitz's deposition from Mercantile II. [Compl. ¶ 43]. As explained in his notice of correction, [ECF No. 75 ("Notice of Correction")], however, Cooper was actually shown the Belveron Proposal as an exhibit and asked questions pertaining to it during the September 2019 Deposition, [id. at 4].[1] Cooper claimed that he did not recall seeing the Belveron Proposal at the September 2019 Deposition and provided multiple explanations as to why he did not become aware of the Belveron Proposal until August 2022, despite having been shown a copy of it in 2019. [Id. at 9–12]. In his Notice of Correction, Cooper also explained that his previous allegation that he had never obtained a copy of the Belveron Proposal prior to August 2024 was also incorrect. [Id.]. In fact, a copy of his September 2019 Deposition transcript, which he received in March 2023, contained embedded links to the deposition exhibits, including the Belveron Proposal. [Id.].

According to the September 2019 Deposition transcript, Mercantile Affordable Partners LLC's counsel ("Opposing Counsel") provided Cooper with two documents marked together as

[1] Cooper attached an excerpt of the September 2019 Deposition transcript as Exhibit 3 of his Notice of Correction. [ECF No. 75-3]. Weston Associates attached a full copy of the transcript and its exhibits as Exhibit 2 to its motion for reconsideration. [ECF No. 80-2].

Exhibit 2: (1) a January 26, 2018 letter on the stationery of Belveron Partners addressed to Ms. Sylvia Rubin (the Belveron Proposal) and (2) a copy of an email to andy.shabco@verizon.net from Louis A. Harrison. [ECF No. 75-3 at 3]; [ECF No. 80-2 at 15]. Opposing Counsel asked Cooper "to take a moment and read both the letter and the e-mail and let [Opposing Counsel] know when [Cooper had] had a chance to do that." [ECF No. 75-3 at 4]. Cooper responded, "Sure. Okay." [Id.]. Cooper was then asked if he had "[s]een the first page of Exhibit 2, the January 26th, 2018 letter before [that day]," to which he responded that he had not. [Id.]. Cooper also stated that he had never seen the email from Harrison to Shabshelowitz. [Id. at 4–5]. Opposing Counsel next asked Cooper whether Shabshelowitz had "advised [Cooper] that the general partner of Mercantile Wharf had approached him about discussing an arrangement providing additional compensation for the acquisition of the limited partnership interest previously owned by [his] grandmother," to which Cooper responded that Shabshelowitz had not. [Id. at 5]. Opposing Counsel then referred Cooper back to the Belveron Proposal and stated, "If you look at the second paragraph on that letter, the second sentence of that second paragraph says the GPs ended the litigation using the plaintiff['s] opinion of value, $48 million at the time of the merger (February, 2015). Do you see where I am?" [Id.]. Cooper responded, "Yes." [Id.]. Opposing Counsel asked Cooper, "Did anyone ever advise you that the claim brought by the Weston Associates affiliate had been resolved using the opinion of value offered by Weston Associates of approximately $48 million?" [Id. at 5–6]. Cooper responded, "I don't believe so." [Id. at 6]. Counsel also asked Cooper whether "anyone ever advised [him] that after the Weston Associates litigation was resolved, the general partner of Mercantile also provided additional compensation to resolve claims held by other former limited partners in Mercantile," to which Cooper responded, "No." [Id.]. Cooper was then shown a settlement agreement

between the General Partner and another limited partner from July 31, 2018, and was asked questions regarding that agreement, including whether anyone had advised him that the General Partner had previously "provided additional compensation to resolve claims held by other former limited partners in Mercantile." [Id.]; [ECF 80-2 at 70].

Cooper claims that despite being shown the Belveron Proposal and being asked questions about it during the September 2019 Deposition, he did not understand the significance of the Proposal until August 2022. [ECF No. 75-12 ¶ 14].

### B. Procedural History

Cooper filed the Complaint on August 23, 2024, alleging breach of fiduciary duty against all Defendants, legal malpractice and negligence against Shabshelowitz and Upton, violation of Massachusetts General Laws Chapter 93A and fraud against Weston Associates and Upton, breach of contract against Weston Associates, and aiding and abetting breach of fiduciary duty against Upton. All Defendants moved to dismiss on November 18, 2024. [ECF Nos. 16, 18, 20]. Following full briefing on these motions, the Court dismissed all claims against Upton (Counts VIII through XIII), the negligence claim against Shabshelowitz (Count III), and the fraud claim against Weston (Count V). [MTD M&O at 26]. The Court denied Shabshelowitz's motion to dismiss the legal malpractice claim against him (Count II) and Weston Associates' motion to dismiss the breach of contract claim against it (Count VII), and granted in part and denied in part Shabshelowitz's motion to dismiss the breach of fiduciary duty claim against him (Count I) and Weston Associates' motion to dismiss the Chapter 93A (Count IV) and breach of fiduciary duty (Count VI) claims against it. [Id.].

On November 11, 2025, Cooper filed his Notice of Correction, [ECF No. 75], to correct two allegations in his Complaint, as explained above. He also indicated that he intended to seek

leave to amend his Complaint in light of these corrections. [Id. at 1]. On November 26, 2025, Weston Associates filed a motion for reconsideration of the Court's partial denial of its motion to dismiss, [ECF No. 79], and on December 4, 2025, Shabshelowitz filed a motion for reconsideration of the Court's partial denial of his motion to dismiss, [ECF No. 85]. On June 1, 2026, the Court granted Shabshelowitz's motion for reconsideration, dismissing all remaining claims against him, and granted in part Weston Associates' motion for reconsideration, dismissing all claims against it aside from the breach of contract claim. [MFR M&O at 15–16].

Upon ruling on the motions for reconsideration, the Court afforded, [ECF No. 124], Cooper the opportunity to withdraw or amend his motion for leave to amend, previously filed on December 11, 2026, [ECF No. 89]. On June 8, 2026, Cooper notified the Court that he intended to stand on his motion for leave to amend as previously filed. [ECF No. 125]. On June 22, 2026, Upton, Weston Associates, and Shabshelowitz each opposed Cooper's motion for leave to amend. [ECF No. 126 (Upton)]; [ECF No. 127 (Weston Associates)]; [ECF No. 128 (Shabshelowitz)].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading prior to trial "with . . . the court's leave" and provides that leave to amend generally should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this standard reflects "a liberal amendment policy," the Court "enjoys significant latitude in deciding whether to grant leave to amend." Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 60–61 (1st Cir. 2018) (quoting ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008)). "In determining whether to grant a motion to amend, the Court must 'examine the totality of the circumstances and [ ] exercise its informed discretion in constructing a balance of pertinent considerations."

Abernathy v. Dewey, 196 F. Supp. 3d 157, 164 (D. Mass. 2016) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30–31 (1st Cir. 2006)). A court may deny leave based on "undue delay, bad faith or dilatory motive, . . . undue prejudice to the opposing party . . . [or] futility of amendment." Advest, Inc., 512 F.3d at 56 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "A request for leave to amend a complaint is not an appropriate vehicle for a second bite at the apple," however, and "[i]f a 'proposed amendment would be futile, because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend.'" 3137, LLC v. Town of Harwich, 126 F.4th 1, 16 (1st Cir. 2025) (quoting Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009)).

## III. DISCUSSION

Defendants argue that the Court should deny Cooper's motion for leave to amend for several reasons, namely that all of Cooper's claims remain time barred or are otherwise futile, that he unduly delayed in moving to amend his complaint, and that, with respect to Upton, the amendment would be unfairly prejudicial.

### A. Futility of Amendment

Defendants argue, and the Court agrees, that despite its bulked-up factual and legal allegations, Cooper's proposed amended complaint does not cure the statute of limitations issue that has already required dismissal of the majority of his claims, and his proposed amendment is therefore futile. See [ECF Nos. 126, 127, 128].

"In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006). At the motion to dismiss stage, the Court considers whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court has already held that Cooper gained actual knowledge of the Belveron Proposal—and accordingly, knowledge of the facts underlying his claims—in September 2019.[2] [MFR M&O at 12–15]. As previously explained by the Court, the statute of limitations had therefore expired for all of Cooper's original claims, aside from the breach of contract claim against Weston Associates, by the time he filed his original Complaint. See [id. at 15–16]. Accordingly, for his amendment not to be futile, Cooper must allege some new fact that would enable him to state a claim despite the Court's holding concerning the statute of limitations. He fails to do so, instead relying largely on a rejection of the Court's holding,[3] and the Court does not find any reason to revisit that holding in light of the facts alleged in the proposed amended complaint.

In his proposed amended complaint, Cooper goes into greater detail on the background and factual underpinnings for his claims. [ECF No. 90-1 ¶¶ 1–155]. He also provides a more elaborate, though often repetitive, discussion of the legal theories supporting his claims against

---

[2] The Court gave Cooper the opportunity to further amend his motion to amend and proposed amended complaint in order to respond to the Court's holding on this point, but Cooper declined to do so. See generally [ECF No. 125].

[3] Cooper states multiple times in both his motion for leave to amend and the proposed amended complaint that:

> [t]he statute of limitations with respect to all claims in this suit was tolled by [Defendants'] intentional concealments until August 2022 at the earliest, when Cooper began to understand the existence and significance of the Belveron Proposal, and relatedly, the various conflicts of interest that prevented his fiduciaries from disclosing the Belveron Proposal to him.

[ECF No. 90-1 ¶ 163]; see also, e.g., [ECF No. 90 at 3, 9–13]; [ECF No. 90-1 ¶¶ 171, 179, 201, 208].

each Defendant. See [ECF No. 90-1 ¶¶ 156–231]. Despite these additions, the substance of Cooper's amended claims remains largely the same as those in his original complaint. Compare [ECF No. 90-1], with [ECF No. 1]. The Court will discuss the claims against each Defendant in turn.

1. Shabshelowitz

Cooper brings claims for breach of fiduciary duty and legal malpractice against Shabshelowitz, alleging, in sum, that Shabshelowitz advised him to enter into the attorney-in-fact agreement, failed to mention certain conflicts of interest, failed to advise Cooper of his rights under the attorney-in-fact agreement, and failed to send Cooper the Belveron Proposal. [ECF No. 90-1 ¶¶ 156–172]. As Cooper acknowledges in his proposed amended complaint, the statute of limitations for these claims against Shabshelowitz were tolled until Cooper gained knowledge of the Belveron Proposal, which should have alerted him to the facts underlying these claims, [ECF No. 90-1 ¶ 171]; see [MFR M&O at 10–11 (explaining fraudulent concealment doctrine)], and the Court has held that he gained such knowledge and the statute of limitations therefore began to run in September 2019, [MFR M&O at 12–15]. Accordingly, these claims against Shabshelowitz are barred by the statute of limitations and, as such, futile.

2. Weston Associates

Cooper brings claims for breach of contract, breach of fiduciary duty, and violations of Chapter 93A against Weston Associates.

In the breach of contract claim, Cooper alleges that Weston Associates failed to keep him apprised of the Mercantile II litigation and the Trust's claim as required in the attorney-in-fact agreement. [ECF No. 90-1 ¶¶ 181–183]. As the Court has previously found, Cooper's breach of contract claim is timely for any allegations that took place after August 23, 2018, because breach

of contract has a six-year statute of limitations and this action was filed on August 23, 2024, see [MTD M&O at 8–9], and, separately, to the extent that Cooper's breach of contract claim depends on the Belveron proposal, it was tolled until September 2019, [MFR M&O at 15–16]. While the language of the breach of contract claim is updated in the proposed amended complaint, it largely "repeat[s] and clarif[ies] factual allegations sufficiently pleaded in the original complaint" and is therefore unnecessary as Cooper is able to seek and use the same evidence under the original claim as he would under the proposed amended claim. Cordero v. Pack, 368 F. Supp. 3d 137, 146 (D. Mass. 2019); see Thibodeau v. Fujisawa USA, Inc., 151 F.R.D. 502, 504 (D. Me. 1993) (finding that proposed amendment was unnecessary and denying motion to amend where Plaintiffs sought to add a claim that would have been "unnecessary and duplicative").

As to the breach of fiduciary duty claim, Cooper alleges that Weston Associates failed to advise Cooper of conflicts of interest related to Upton's representations, misrepresented that Mercantile I was ongoing, failed to provide Cooper with a copy of the Belveron Proposal, failed to engage in reasonable pre-suit settlement attempts, failed to advise Cooper about the counterclaim against Shabshelowitz and affirmative defenses related to Weston Associates in Mercantile II, and misrepresented to Cooper that Weston Associates had a contractual right to control settlement and litigation strategy. [ECF No. 90-1 ¶¶ 173–179, 185–193]. In light of the Court's holding concerning Cooper's knowledge of the Belveron Proposal, all of these claims are now time-barred.

The Court previously explained that claims of fiduciary duty, like other tort claims under Massachusetts law, are subject to a three-year statute of limitations. [MTD M&O at 8]. Cooper's original breach of fiduciary duty claim against Weston Associates focused on conduct

following the Belveron Proposal, particularly Weston's conduct in relation to the Mercantile II litigation, see [id. at 19 (quoting [ECF No. 1 ¶ 210])], and on that basis, the Court concluded that the statute of limitations could be tolled until Cooper learned of the Belveron Proposal, [id. at 15]. Because it appeared at the time that Cooper learned of the Belveron Proposal in 2022, rendering his breach of fiduciary duty claim timely, the Court examined whether Cooper had stated a claim against Weston Associates, and concluded that he had. [Id. at 20–21]. Now, however, the Court has found that Cooper knew of the Belveron proposal in September 2019, more than three years before he filed this action. Therefore, none of the alleged harms in the proposed amended complaint occurred within three years of this action being filed, and all are time-barred. Cooper's insistence otherwise, see [ECF No. 90-1 ¶ 179], does not alter that conclusion. Accordingly, these claims are futile.

Finally, in connection with his amended Chapter 93A claim, Cooper asserts that Weston Associates misrepresented that the Trust would not be responsible for paying litigation costs in Mercantile II. [ECF No. 90-1 ¶ 189]. As Weston Associates points out, however, see [ECF No. 127 at 8], Cooper acknowledges that he signed the attorney-in-fact agreement, [ECF No. 90-1 ¶ 81], which is attached to the proposed amended complaint as Exhibit 13, [ECF No. 90-1 at 152–53], and clearly states that "Weston agrees to . . . to turn over to Rubin 50% of Weston's net recovery (after expenses and reasonable attorneys' fees) if and when there is a recovery of money damages," [id. at 152]. As Weston Associates argues, this exhibit, attached to the proposed amended complaint, contradicts Cooper's allegations. See Avanru Dev. Grp., Ltd. v. Town of Swanzey, 777 F. Supp. 3d 63, 77 (D.N.H. 2025) ("When exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." (quoting Gill v. Judd, 941 F.3d 504, 514 (11th Cir. 2019))). Further, even if Weston Associates

had misled Cooper into believing that the trust's recovery would be before litigation costs and expenses, Upton informed Cooper on September 10, 2018, and again in a May 2019 appraisal report that the trust was entitled to 50% of any recovery after the deduction of a pro-rata share of attorney's fees and litigation expenses. See [ECF No. 90-1 at 236]; [ECF No. 1-3 at 5]. As such, Cooper had notice of the facts giving rise to this claim against Weston Associates by 2019 at the latest, and it is, therefore, time-barred based on both the three year statute of limitations for torts, Fincher v. Town of Brookline, 26 F.4th 479, 485–86 (1st Cir. 2022) (citing Mass. Gen. Laws ch. 260, § 2A), and the four year statute of limitations for Chapter 93A claims, Mass. Gen. Laws ch. 260, § 5A.

3. Upton

With respect to Upton, Cooper reasserts claims for breach of fiduciary duty, legal malpractice, aiding and abetting Weston Associates' breach of fiduciary duty, and violations of Chapter 93A, [ECF No. 90-1 ¶¶ 194–225], that the Court previously dismissed as time-barred, see [MTD M&O at 16–17]. In his proposed amended complaint, Cooper alleges that Upton, in his capacity as Rubin's attorney, and also as a subagent appointed by Weston Associates, was independently required to communicate the Belveron Proposal to Cooper. [ECF No. 90 at 18–19]; [ECF No. 90-1 ¶ 196]. While it is not clear that this recharacterization cures the issue identified by the Court as to what duties Upton independently owed Cooper and the Trust, the Court need not decide the issue because the claims remain time-barred even under Cooper's new formulation.

In relation to his four claims against Upton, Cooper alleges that Upton failed to advise him of certain conflicts of interest between Weston Associates, Rubin, and the Trust, failed to advise him that Weston Associates owed him a duty of obedience, misrepresented that Cooper

had assigned the Trust's claim to Weston Associates, failed to pursue prelitigation settlement options, failed to send Cooper the Belveron Proposal, misrepresented that Mercantile I was still ongoing, failed to disclose the counterclaim against Shabshelowitz and the affirmative defense related to Weston Associates in Mercantile II, and misrepresented that the Trust would be responsible for litigation costs.[4] [ECF No. 90-1 ¶¶ 197–99, 206, 214, 220]. Again, Cooper's main argument for why these claims are not time-barred is that the statute of limitations was tolled until Cooper gained knowledge of the Belveron Proposal.[5] [ECF No. 90-1 ¶¶ 201, 208, 225]. Because Cooper gained knowledge of the Belveron Proposal in September 2019, this argument fails and these claims against Upton are time-barred.

4. Common Law Fraud Claim Against All Defendants

In his proposed amended complaint, Cooper brings a new claim for common law fraud against all three Defendants. [ECF No. 90-1 ¶¶ 226–231]. This claim essentially repeats all of the allegations that he separately made against each Defendant and claims that they all intentionally and knowingly acted in concert and engaged in a scheme to defraud Rubin and the Trust by their collective omissions. [Id. ¶¶ 227, 229]. Like all of Cooper's other claims, knowledge of the Belveron Proposal would have put Cooper on notice of the harms he allegedly

---

[4] As discussed above, Cooper had notice of the litigation costs provision by 2019 at the latest, and the claims based on that allegation are, therefore, time-barred based on the three year statute of limitations for torts, Fincher v. Town of Brookline, 26 F.4th 479, 485–86 (1st Cir. 2022) (citing Mass. Gen. Laws ch. 260, § 2A), and the four year statute of limitations for Chapter 93A claims, M.G.L. ch. 260, § 5A.

[5] Cooper also briefly states that Upton's "material omissions and misrepresentations . . . and his continuing representation of Mrs. Rubin and the Trust throughout Mercantile II, tolls the statute of limitations" with respect to the claims against him. [ECF No. 90-1 at 72]. Cooper does not explain, however, how these actions would have tolled the statute of limitations beyond the time when Cooper gained actual knowledge of the Belveron Proposal and became aware of his injuries.

suffered due to this alleged scheme. Because Cooper gained actual knowledge of the Belveron Proposal in September 2019, his common law fraud claim is untimely.

### B. Undue Delay and Dilatory Motive

In addition to futility, each Defendant also argues that Cooper's motion for leave to amend was unduly delayed, and Shabshelowitz and Upton argue that the motion was dilatory and made in bad faith.

Specifically, Weston Associates argues that Cooper did not discover any new information that was unavailable to him when he filed his original complaint, but rather is "scrambling" to save claims that are time-barred and "throwing more of the same against the wall in the hopes that something sticks." [ECF No. 127 at 11]. Shabshelowitz contends that Cooper had the Belveron Letter fifteen months before he filed his original complaint, and he had all of the facts underlying his new common law fraud claim at the time he filed his original complaint but failed to include them there. [ECF No. 128 at 6]. He also argues that Cooper's proposed amended complaint is contradictory because his original complaint claims he was harmed because he did not know of the Belveron Proposal, while his amended complaint contends that he was harmed because he did not understand the Belveron Proposal. [Id. at 5–6].

Upton argues that the proposed amended complaint is simply a "dressed-up" version of Cooper's original complaint, that all of the factual information in the proposed amended complaint was available to Cooper when he filed his original complaint, and he attempted to file an amended complaint over a year after Upton filed his motion to dismiss and five months after

Upton had been dismissed from the case, and that re-adding him as a defendant would prejudice his interests.[6] [ECF No. 126 at 8–14, 20].

When "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998) (affirming district court's denial of leave to amend fifteen months after filing of original complaint). "Plaintiffs may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint should the court hold the first amended complaint was insufficient." Advest, Inc., 512 F.3d at 57.

Here, Cooper filed his original complaint on August 23, 2024, [ECF No. 1], and Defendants filed their motions to dismiss on November 18, 2024, [ECF No. 16]; [ECF No. 18]; [ECF No. 20]. Plaintiff then had over eight months while those motions to dismiss were pending to file an amended complaint addressing any deficiencies identified by Defendants, but declined to do so. On or around October 15, 2025, Plaintiff apparently learned that he had been shown the Belveron Proposal in September 2019 and had been in possession of the proposal since March 2023, and Cooper notified Defendants of this discovery. [ECF No. 80-1 at 4]; [ECF No. 90-1 ¶ 153]. Approximately one month later, Cooper filed his notice of correction with the Court clarifying the date on which he was first shown the Belveron Proposal. [ECF No. 75]. One month later, Cooper filed the instant motion for leave to file an amended complaint. [ECF No. 90].

---

[6] Upton also argues that Cooper is acting in bad faith as evidenced by the ongoing discovery dispute between Cooper and Upton concerning Upton's Weston Associates email folder. [ECF No. 126 at 18–19]. The Court finds that this dispute has little relevance to Cooper's proposed amendments to his complaint.

As Defendants point out, an almost fifteen-month delay[7] from filing an original complaint to filing an amended complaint is a considerable amount of time, and the First Circuit has affirmed denials of motions for leave to amend filed within similar timeframes. See Acosta-Mestre, 156 F.3d at 52; Palmer, 465 F.3d at 30–31 (affirming denial of motion for leave to amend filed fifteen months after original complaint based on previously available information). That is particularly the case here, where almost all of the factual allegations and details added into the amended complaint, aside from two specific allegations regarding the discovery of the Belveron Proposal, were available to Cooper when he filed his original complaint. Said differently, almost all of the new factual allegations and legal theories included in the proposed amended complaint, such as, for example, those described in connection with the common law fraud claim, could have been included from the outset of the action, or at least many months before the proposed amended complaint was filed, and Cooper provides little explanation for the delay in adding them.

Insofar as the proposed amended complaint adds and corrects information regarding Cooper's review of the Belveron Proposal in September 2019, the Court finds that the amendment was sufficiently timely as it was made within two months of discovery of the new information.

## IV. CONCLUSION

Taking the totality of the circumstances into consideration, particularly that Cooper's proposed amended claims are largely futile or unnecessary, and his delay in amending his

---

[7] Cooper's delay is particularly noteworthy with respect to Upton considering that Upton was fully dismissed from the case in the intervening months, and Cooper made no indication that he planned to re-add Upton as a defendant until he was forced to file his notice of correction and subsequently decided to revamp his pleadings altogether.

complaint to incorporate allegations that have generally been available since the inception of this case, Cooper's motion for leave to file an amended complaint is **DENIED**. The parties shall file a proposed amended schedule with the Court which has the case trial-ready by December 2026.

**SO ORDERED.**

August 27, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE